**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| L.F. b/n/f MARY RUFFIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-08-2415 |
| § | |
| HOUSTON INDEPENDENT SCHOOL § | |
| DISTRICT, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

The plaintiff, Mary Ruffin, suing on behalf of her daughter, L.F., moved for a new trial or to alter and amend the judgment entered in favor of the defendant, the Houston Independent School District (HISD). L.F. is a student with disabilities eligible to receive special education and related services from HISD. Ruffin sued in 2008 to challenge the decision of a Texas Education Agency special education hearing officer that in the 2006–2007 and 2007–2008 school years, HISD had provided L.F. a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Under the IDEA, the parents of a disabled child may file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). Ruffin had filed a complaint with the Texas Education Agency on April 20, 2007, on behalf of L.F. *See L.F. b/n/f M.R. v. Houston Indep. Sch. Dist.*, Docket No. 222-SE-0407. After an evidentiary hearing held in March 2008, the hearing officer issued an opinion concluding that HISD provided Ruffin's child with an FAPE consistent with the IDEA's requirements and denying the relief Ruffin sought, which included a change of placement, private

1

tutoring at HISD expense, and outside therapeutic counseling.

In this suit, Ruffin alleged violations of the IDEA, 20 U.S.C. § 1400 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, and civil rights violations under 42 U.S.C. § 1983. (Docket Entry No. 32). Ruffin argued that this court should disregard the hearing officer's decision because of an alleged inappropriate relationship between that officer and HISD's counsel. (Docket Entry No. 31 at 2; Docket Entry No. 32 at 8, 11). HISD moved for summary judgment that the administrative record established that as a matter of law, Ruffin did not show any violation of federal law and was not entitled to the relief she seeks. (Docket Entry Nos. 18, 39). HISD also moved for sanctions for Ruffin's accusation that HISD's counsel and the hearing officer had an inappropriate "bedroom" relationship. (Docket Entry No. 41). This court granted HISD's motion for summary judgment and granted in part and denied in part HISD's motion for sanctions. (Docket Entry No. 55). Final judgment was entered in September 2009.

Ruffin, proceeding *pro se*, filed a motion for new trial within ten days after the judgment was entered. (Docket Entry No. 58). The motion is properly considered under Rule 59(e) of the Federal Rules of Civil Procedure.

Ruffin has filed the following motions: "Motion for New Trial; Or Consideration, Altering or Amending a Judgment, Motion to the Court to Exceed the Court Page Limit," (Docket Entry No. 58); "Motion of Leave - To Substitute the Following Pages to Correct Typing Errors and Motion of Leave - To Submit Confirmation of Exhibit A and Suspension Document Last Page of Exhibit B," (Docket Entry No. 59); and "Motion of Leave to Order this Court to Inform the Plaintiff of the Status of this Docket and Motion of Leave to Order this Court to Submit Information on Filing this Docket to the Fifth Circuit Court of Appeals Under Indigence," (Docket Entry No. 62). The HISD

responded to the Motion for New Trial, (Docket Entry No. 60), and filed a response to Docket Entry No. 62, moving to strike the plaintiff's proposed additional evidence, (Docket Entry No. 63, 64). Ruffin filed a Response to the Defendant's Response and a Motion to Deny the Defendant's Motion to Strike, with a "Motion of Permission to Clarify the Record that the Plaintiff Motion of Permission of the Status of This Docket Is in Reference to the Plaintiff Document 58 – Motion for New Trial, Reconsideration, and Altering or Amending a Judgment," (Docket Entry No. 65), and a "Motion of Leave to Order this Court to Refer to the Court Memorandum and Opinion – Page 16" and "Motion of Leave to Order This Court to Allow the Plaintiff to Substitute the Defendant Pages 21 and 22 of Docket 65 to the Correct Copies," (Docket Entry No. 66). The motions and responses are analyzed below.

**I.     The Motion for New Trial**

    **A.     The Legal Standard**

Rule 59(e) governs when the reconsideration motion is filed within 28 days of the challenged order or when the motion seeks reconsideration of an interlocutory order. *Steadfast Ins. Co. v. SMX 98, Inc.*, No. 06-2736, 2009 WL 3190452 (S.D. Tex. Sept. 28, 2009) (drawing the line at 10 days instead of 28 days because the case was decided before the amendments to Rule 59 took effect on December 1, 2009). Ruffin moved for reconsideration nine days after the summary judgment order, meaning that the motion falls under Rule 59(e).

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "[A] motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence'

and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Relief is also appropriate when there has been an intervening change in the controlling law. *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995). The Rule 59(e) standard "favor[s] denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993) (summary calendar).

### B. The Issue of the Record

Ruffin argues that this court should not only consider the administrative record created by the March 12–13, 2008 hearing and the documents submitted to the hearing officer before her decision issued on May 8, 2008, but also four documents that Ruffin attached as exhibits to Docket Entry No. 62. The HISD moves to strike these as irrelevant. (Docket Entry No. 63, 64).

"When a district court reviews a hearing officer's decision under the IDEA program, it receives the records of the administrative proceedings and also takes additional evidence at the request of any party." *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 582–83 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1982 (2010); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997). The first two exhibits Ruffin attached were not created until long after the hearing concluded and covered events after the end of the 2007–2008 school year. Exhibit A is a TEA Special Education Complaint Investigation Report dated January 29, 2010. The report

4

responds to a complaint Ruffin filed on December 1, 2009, about L.F. Exhibit B is Ruffin's complaint and Exhibit C is a copy of the law cited in the complaint. The report stated that the HISD's refusal to allow L.F. admission in the fall of 2009 because Ruffin had not provided copies of L.F.'s prior school records was erroneous and ordered her to be admitted as well as other corrective actions. But this report addresses dates and events long after the school years and events at issue in the March 2008 hearing and this court's prior opinion. And the issue was very different from any raised by Ruffin or addressed in the administrative hearing. These exhibits are irrelevant and the HISD's motion to strike them is granted.

Exhibit D is dated March 26, 2007. It is also a TEA Special Education Complaint Investigation Report responding to a written complaint by Ruffin dated January 25, 2007. In the letter, Ruffin complained, among other things, that the HISD had failed to protect L.F.'s privacy by delivering documents to Ruffin's home, where they were received by a babysitter; the HISD had failed to provide Ruffin proper access to the records relating to L.F; and the HISD had not complied with the requirement that an eligible child be reevaluated every three years. The HISD found no substantiation for the first two allegations. As to the last allegation, the HISD found that L.F. had been evaluated on December 2, 2003 and on December 14, 2006. The HISD was 12 days late in completing the 2006 evaluation, which was a violation, but the TEA concluded that the violation had not denied L.F. a free appropriate public education. (Docket Entry No. 62, Ex. D). Because this Exhibit addresses the period at issue, the HISD's motion to strike it is denied.

**III. Analysis**

Ruffin appears to argue that several of the statements in this court's opinion were not supported by the administrative hearing record and related documents. The HISD has responded

to some of the arguments to illustrate that they ignore other parts of the administrative record. Given the scattershot nature of the arguments, it is useful to focus on the two school years at issue.

Ruffin argues that this court was incorrect in rejecting her allegation that the HISD failed to provide proper notice of the February 15, 2007 Admission, Review, and Dismissal Committee ("ARDC") meeting. The record showed that the ARDC chairperson took a number of steps to schedule an ARD meeting when all necessary personnel could attend and to provide notice to Ruffin.[1] The record showed that hand-delivery of the notice was attempted at Ruffin's home on February 8, 2007, five school days before the meeting, and the school sent her a copy of the notice in the mail. Ruffin's argument is not supported by the record.

Ruffin also argues that the record does not support rejecting her claim that L.F. was wrongly denied extended school year (ESY) services. (Docket Entry No. 58 at 15–16). The record shows that the ARDC committee in February 2007 determined that L.F. did not need ESY services. The hearing examiner found that the record showed that "individuals with multiple years of contact with Petitioner, including her BSC [Behavior Service Class] teacher for the past three years and her

---

[1] As this court recounted in the opinion, James King, the ARDC Chair and Special Education Department Chair at Kelso Elementary, tried to schedule an ARDC meeting to review the recently completed evaluations of L.F. On January 4, 2007, King hand-delivered to Ruffin's home a notice of a meeting scheduled for January 11, 2007. Because Ruffin was not home, King left the notice with Ruffin's brother. Ruffin responded by a facsimile communication on January 8, 2007, stating that she could not attend a meeting on January 11. Ruffin then called King to complain about him hand-delivering the notice and threatened to have him arrested for trespassing. (Transcript of March 12, 2008 Hearing at 91:5–12). On January 11, King mailed Ruffin a second meeting notice, proposing a meeting date of January 19. Ruffin responded on January 16, stating that she was only available on January 30. King could not schedule the meeting on that date because some of the necessary HISD staff members were unavailable. King left Ruffin a telephone message on February 6, 2007 to discuss alternative dates. Ruffin did not respond. (Hearing Officer Opinion at 5). King decided to schedule the meeting for February 15, 2007. On February 8, 2007, King had a courier service hand-deliver another meeting notice to Ruffin at her home. The courier service returned the notice, stating that he was informed that Ruffin did not live at that address. (Transcript of March 12, 2008 Hearing, at 90:10–21). King sent Ruffin a copy of the meeting notice by regular mail on February 8. (Hearing Officer Opinion at 5).

school principal for the past six years . . . determined that ESY services were not needed for Petitioner as she was not likely to show regression over the summer months." (Hearing Officer Opinion at 5, ¶ 16, citing R. Ex. 3 at 21, Transcript of March 12, 2008 Hearing at 95). In this ARD meeting of February 15, 2007, the ARDC concluded that L.F. should continue to receive special transportation to and from school, spend 25 hours per week in the BSC classroom, and receive 30 minutes of counseling per week. The ARDC developed a new behavioral support plan and a new IEPs for L.F. The plan and IEPs included classroom modifications of extended time, modified assignments and assessments, oral responses, and an assigned seat. The ARDC declined to recommend ESY services, noting that L.F. had not shown regression over the summer break. (Admin. Record at 827). Ruffin points out that the following year, when L.F. was moved to middle school, she did receive ESY services. The record shows that the October 2007 ARDC did recommend ESY services, which this court noted in the prior opinion.[2] That fact does not make the February 2007 ARDC's conclusion that ESY services were not needed a violation of the IEP or a failure to provide a free appropriate public education.

Ruffin argues that the record shows that in the semester beginning in January 2007, the HISD failed to comply with the IEP and did not provide L.F. education in the least restrictive environment

---

[2] On October 17, 2007, the ARDC at Attucks Middle School sent Ruffin notice of a meeting to be held on October 26, 2007. The notice included L.F.'s new proposed IEPs for 2007—2008. Ruffin attended the meeting, which lasted from 9:00 a.m. to 2:00 p.m. (Admin. Record at 1033–34). The IEPs included goals and objectives in reading, English, math, history, science, social skills, and counseling. (*Id.* at 1008–15). The ARDC recommended that L.F. continue receiving a majority of her instruction in the BSC classroom, but that she also attend physical education and study lab in a general education classroom. (*Id.* at 1016). L.F.'s behavioral support plan was updated and modified, and the ARDC recommended that L.F. receive one hour of counseling per week. (*Id.* at 1018). The ARDC also recommended that L.F. receive ESY services in the summer of 2008 to address behavioral and academic goals. (*Id.* at 1031). Ruffin disagreed with the IEPs, stating that the instructional levels were too high. (*Id.* at 1034). Ruffin asked for an Independent Educational Evaluation, which the ARDC granted. (*Id.*). In November 2007, the staff at Attucks Middle School attempted to reconvene an ARDC meeting, but Ruffin declined. (Hearing Officer Opinion at 12).

("LRE"). Ruffin bases her argument on one statement made by Ronald Riley, a special education teacher at Kelso Elementary, that L.F. stayed in his classroom all day and that the textbooks used were fifth-grade books. (Docket Entry No. 58 at 19, 21–22; Docket Entry No. 65 at 5; Transcript of March 12, 2008 Hearing, Vol. 1 at 151–52). The IEP established in the February 2007 ARD required L.F. to spend 25 hours per week in the BSC classroom and to receive 30 minutes of counseling per week. The hearing examiner specifically found that during the 2006–2007 school year, L.F. received all counseling hours specified in her IEP. (Hearing Officer Opinion at 6, ¶ 25). The record is consistent with this conclusion. (Transcript of March 12, 2008 Hearing, Vol. 2 at 289; P. Ex. 7 at 101–02). Riley's cited testimony shows that, consistent with the IEP, the classroom instruction L.F. received was in the BSC. Ruffin's argument that this testimony also shows a violation of the IEP specifications for the grade level for each academic subject L.F. was to receive is similarly unpersuasive. (Docket Entry No. 65 at 5–6). The record shows that L.F. successfully completed fifth grade, achieving the ARDC's expectations on the SDAA test. (Admin. Record at 956–57, R. Ex. 14). L.F. was promoted to the middle school and another ARDC was held in October 2007. (Admin. Record at 961, R. Ex. 16).

Ruffin also challenged the finding by the Hearing Officer that during the 2007–2008 school year, the BSC classroom teachers implemented the proper IEP. The record showed that when L.F. entered middle school, the ARDC continued BSC placement for her. The ARDC recommended that in middle school, L.F. receive 22.8 hours of special education services per week, and an IEP was developed for academic areas, social skills, and counseling. Another ARDC was held on October 26, 2007. Ruffin relies on one statement by John Pham, L.F.'s teacher in November 2007, identifying the February 2007 rather than the October 2007 ARD as the one he was implementing.

(Transcript of March 13, 2008 Hearing, Vol. 2 at 329). The record shows that during the beginning of the school year, the IEPs put into place were those developed in the February 2007 ARDC meeting. (Hearing Officer Opinion at 7, ¶ 33, Transcript of March 12, 2008 Hearing, Vol. 1 226–27, 251; Vol. 2, 329). The record shows that the October 2007 IEP was later implemented. The October 2007 ARD recommended increasing the amount of counseling L.F. received. That was done. (Admin. Record at 1073, R. Ex. 29 at 7;Transcript of March 12, 2008 Hearing, Vol. 2 at 184–85). The record also showed that L.F. passed all her subjects in the first semester of 2007 with a grade of 80, except for PE/Health, and that in the second grading period, she made a 90 average in math, study lab, English, and social studies; a 75 average in enrichment; an 84 average in PE/Health; and an 85 average in science. In the second grading period, her conduct grades improved. In the six-week grading period just before the due process hearing, her progress on her IEP objectives also improved. (Hearing Officer Opinion at 7, ¶ 34, 35). There is no basis to find that the wrong IEP was implemented.

The remaining arguments Ruffin raises are precluded by the record. For example, Ruffin vigorously argues that this court erred in granting summary judgment on her claims that HISD failed to provide periodic progress reports, failed to conduct manifestation determination reviews, and failed to provide qualified teachers for L.F. This court granted summary judgment on the basis of Ruffin's failure to raise these claims during the lengthy administrative process. The IDEA ensures parents "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). Section 1415(f) guarantees that parents with such a complaint have access to an impartial due process hearing through a state

or local educational agency. *Id.* § 1415(f). The IDEA requires that a plaintiff first exhaust the state or local administrative process before filing suit in federal district court. *See id.* § 1415(*l*); *Papania-Jones v. Dupree*, 275 F. App'x 301, 303–04 (5th Cir. 2008); *see also Flores v. Sch. Bd. of DeSoto Parish*, 116 F. App'x 504, 511 n.26 (5th Cir. 2004) (noting that the exhaustion requirement in former § 1415(f) had been preserved in current § 1415(*l*)). "The IDEA's exhaustion requirement serves a number of policy objectives: it allows deference to agency expertise in resolving educational matters; it gives the agency a first opportunity to correct errors; it presents courts with a more fully developed record; and it prevents parties from deliberately disregarding the statute's comprehensive procedures and remedies." *Marc v. N.E. Indep. Sch. Dist.*, 455 F. Supp. 2d 577, 592 (W.D. Tex. 2006); *see also Papania-Jones*, 275 F. App'x at 303–04 ("By failing to exhaust the IDEA's administrative remedies, the Jones family did not give the State an appropriate opportunity to resolve their complaints prior to filing suit against the State."). If a plaintiff's complaint falls under § 1415(b)(6) and she fails to exhaust her administrative remedies before filing suit, the court must dismiss it. *See Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992) (summary calendar) (dismissing IDEA claim for failure to exhaust administrative remedies); *Flores*, 116 F. App'x at 511–12 (same). Ruffin filed her initial complaint with the TEA on April 20, 2007 and subsequently filed several amended complaints. In October 2007, the TEA hearing officer issued an order outlining eight issues for review at the due process hearing. The issues did not include the claims that HISD failed to provide progress reports, manifestation determination reviews, or qualified teachers. Ruffin did not seek to add these claims to the issues for the due process hearing. Ruffin's failure to raise these claims in the administrative process barred her under the IDEA from raising them for the first time in the federal district court. (Docket Entry No. 55 at 25–26). Ruffin

has shown no basis for relief from this result under Rule 59(e). Nor has she responded to HISD's points that the record does support the statement in this court's Memorandum and Opinion that the HISD personnel who evaluated L.F. included teachers certified in special education. (Docket Entry No. 60 at 3–4).

The record shows that Ruffin's disagreements with this court's findings are in many cases a disagreement with the decisions made by the educators and administrators who are charged with providing her daughter with a free appropriate public education. The record shows that Ruffin has insisted that the HISD provide L.F. with a free appropriate education and that the HISD has worked diligently to perform that responsibility. The record shows that "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 584 (5th Cir. 2009) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 253 (5th Cir. 1997)), *cert. denied*, 130 S. Ct. 1982 (2010). Both the hearing officer and this court found that all of these considerations militated in favor of finding that HISD provided L.F. with a free appropriate public education. Ruffin's arguments do not support the relief she seeks under Rule 59.

**III.     Conclusion**

Ruffin's motion for new trial is denied. (Docket Entry No. 58). Ruffin's Motion of Leave - To Substitute the Following Pages to Correct Typing Errors and Motion of Leave - To Submit Confirmation of Exhibit A and Suspension Document Last Page of Exhibit B," (Docket Entry No. 59), is granted. Her "Motion of Leave to Order this Court to Inform the Plaintiff of the Status of this

Docket and Motion of Leave to Order this Court to Submit Information on Filing this Docket to the Fifth Circuit Court of Appeals Under Indigence," (Docket Entry No. 62), is moot to the extent it asks this court to rule and denied in part and granted in part to the extent it seeks to expand the record to add evidence. HISD's motion to strike this additional evidence, (Docket Entry No. 63, 64), is granted in part and denied in part. Ruffin's "Motion of Permission to Clarify the Record that the Plaintiff Motion of Permission of the Status of This Docket Is in Reference to the Plaintiff Document 58 – Motion for New Trial, Reconsideration, and Altering or Amending a Judgment," (Docket Entry No. 65), is moot. Ruffin's "Motion of Leave to Order this Court to Refer to the Court Memorandum and Opinion – Page 16" and "Motion of Leave to Order This Court to Allow the Plaintiff to Substitute the Defendant Pages 21 and 22 of Docket 65 to the Correct Copies," (Docket Entry No. 66), is granted to the extent of allowing the substitution of pages and otherwise moot.

SIGNED on August 4, 2010, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge